JOHN L. BURRIS, Esq., SBN 69888
BEN NISENBAUM, Esq., SBN 222173
ADANTE D. POINTER, Esq., SBN 236229
LATEEF H. GRAY, Esq., SBN 250055
**THE LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:  (510) 839-5200
Facsimile:  (510) 839-3882
john.Burris@johnburrislaw.com
bnisenbaum@johnburrislaw.com
adante.Pointer@johnburrislaw.com
lateef.Gray@johnburrislaw.com

CHARLES A. BONNER, ESQ., SB# 85413
A.  CABRAL BONNER, ESQ., SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212 SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
charles@bonnerlaw.com
cabral@bonnerlaw.com

Attorneys for Plaintiff
JASMINE ABUSLIN

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JASMINE ABUSLIN,                                )   Case No. 3:17-cv-04804 LB
                                                )
                    Plaintiff,                  )   **FIRST-AMENDED COMPLAINT**
     v.                                         )
                                                )
CITY OF RICHMOND; POLICE CHIEF                  )
CHRIS MAGNUS; POLICE CHIEF                      )   **JURY TRIAL DEMANDED**
ALLWYN BROWN; LT. BRIAN                         )
DICKERSON; LT. ANDRE HILL;                      )
SERGEANT ARMONDO MORENO;                        )
SERGEANT MIKE ROOD; OFFICER                     )
JERRED TONG; OFFICER TERRANCE                   )

JACKSON; and Does 1-200, individually                    )
jointly and severally,                                    )
                                                          )
                        Defendants.                       )
_____                  )

## **INTRODUCTION**

1. Defendants are City of Richmond police officers, lieutenants, sergeants, their supervisors and employers. They are required and empowered to protect the weakest among us. When weak and vulnerable victims come to them for support and protection, they have the obligation to help, not further the horrors suffered by victims. Plaintiff JASMINE ABUSLIN was a victim, trapped in the sex trade since she was a minor. She was exploited by pimps and made to sell her body for money. When the named Defendant Police Officers met Plaintiff, they were legally obligated to help her, not exploit her. Instead of providing her a way out of her exploitation, the Defendant officers continued to victimize and exploit a teenage, underage girl who needed to be rescued.

2. The Richmond Police Department, failed to properly supervise its officers, failed to provide adequate training on identifying victims of sexual exploitation and abuse, allowed improper access to criminal databases and failed to put in place adequate policy and training on social media use.

3. These officers, their supervisors and city employers either directly engaged in, stood by with a blind eye, or acted to cover up the illegal, corrupt exploitation of Plaintiff ABUSLIN by their own sworn officers in order to engage in sexual acts with her. They expressly and/or implicitly coerced Plaintiff ABUSLIN to continue such acts for her alleged protection. These acts constituted unlawful sex trafficking amongst Richmond Police Department officers and have caused Plaintiff ABUSLIN to suffer unimaginable abuse and pain that she and her family will endure for the rest of their lives.

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

**JURISIDICTION**

4.  This Court has jurisdiction over this lawsuit because the suit arises under 42 U.S.C. § 1983 and asserts facts showing that Defendants, and each of them, acted willfully, deliberately and pursuant to a policy, custom and practice, and with reckless disregard of Plaintiff ABUSLIN's established Federal Constitutional rights.

5.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendants reside in this district. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because the events, acts and omissions giving rise to this claim occurred in this district.

**PARTIES**

6.  Plaintiff herein, fictitiously-named JANE DOE ('DOE'), is readily recognizable as a Latino American female, and was at all times herein mentioned, a citizen of the United States and resident of the State of California.

7.  That at all times herein mentioned, defendant, CITY OF RICHMOND ("CITY") is a municipal corporation, organized and existing under and by virtue of the laws of the State of California, and operates the RICHMOND POLICE DEPARTMENT ("RPD"). RPD is a division of the City of Richmond, which at all times was operated, managed, maintained, supervised and controlled by the CITY and which is a governmental organization of the State of California.

8.  That at all times herein mentioned, defendant, POLICE CHIEF CHRIS MAGNUS ("CHIEF MAGNUS"), was the Richmond Police Department Chief throughout the period of 2006 through 2015, and is sued in his individual capacity, and in his capacity as Chief of the Richmond Police Department.

9.  That at all times herein mentioned, defendant, POLICE CHIEF ALLWYN BROWN ("CHIEF BROWN"), was the Richmond Police Department Chief throughout the period of 2015 to the present, and is sued in his individual capacity, and in his capacity as Chief of the Richmond Police Department.

10.  That at all times herein mentioned, defendant, LIEUTENANT BRIAN DICKERSON ("LT. DICKERSON"), was head of the Richmond Police Department's Office of Internal Affairs throughout the period of 2013-2015, and is sued in his individual capacity, and in

his capacity as an officer with the Richmond Police Department.

11.     That at all times herein mentioned, defendant, LIEUTENANT ANDRE HILL ("LT. HILL"), was an officer with the Richmond Police Department, and is sued in his individual capacity, and in his capacity as an officer with the Richmond Police Department.

12.     That at all times herein mentioned, defendant, SERGEANT ARMONDO MORENO, ("SGT. MORENO"), was an officer with the Richmond Police Department, and is sued in his individual capacity, and in his capacity as an officer with the Richmond Police Department.

13.     That at all times herein mentioned, defendant, SERGEANT MIKE ROOD, ("SGT. ROOD"), was an officer with the Richmond Police Department, and is sued in his individual capacity, and in his capacity as an officer with the Richmond Police Department.

14.     That at all times herein mentioned, defendant, OFFICER JERRED TONG ("TONG"), was an officer with the Richmond Police Department, and is sued in his individual capacity, and in his capacity as an officer with the Richmond Police Department.

15.     That at all times herein mentioned, defendant, OFFICER TERRANCE JACKSON ("JACKSON"), was an officer with the Richmond Police Department, and is sued in his individual capacity, and in his capacity as an officer with the Richmond Police Department.

16.     That at all times herein mentioned, DEFENDANTS CHIEF MAGNUS, CHIEF BROWN, LT. DICKERSON, LT. ANDRE HILL, SGT ARMONDO MORENO, S G T . M I K E   R O O D , OFFICER JERRED TONG and O F F I C E R  TERRANCE JACKSON (hereinafter, "Defendant RPD Police Officers" acted under color of state law and within the course and scope of their employment with the CITY and the Richmond Police Department.

17.     That at all times herein mentioned, defendants, CHIEF MAGNUS and CHIEF BROWN respectively, were employed by the CITY as the Richmond Police Department's Chief of Police.

18.     That at all times herein mentioned, CHIEF MAGNUS, followed by CHIEF BROWN, were the officials highest in the chain of command in the Richmond Police Department and were the highest supervising policymakers in the Richmond Police Department.

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

4

19.     That at all times herein mentioned LT. DICKERSON was the head of and in charge of the Internal Affairs Division ("IAD") of the RPD and in the chain of command to RPD's Chief of Police.

20.     That at all times herein mentioned, LT. DICKERSON as head of the IAD, was a supervising policymaker of the RPD.

21.     That at all times herein mentioned, CHIEF MAGNUS, CHIEF BROWN, and LT. DICKERSON are being sued herein in both their individual and official capacities.

## DOE DEFENDANTS

22.     Plaintiff does not know the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT Does 1 through 200 inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend her complaint to allege their true names and capacities when this has been ascertained.

## RATIFICATION, ADOPTION AND AUTHORIZATION

23.     DEFENDANT CITY and its managing agents, in both their individual and official capacities, ratified, adopted and authorized each of the named DEFENDANTS and managing agents' illegal conduct. DEFENDANT CITY, and its managing agents, in both their individual and official capacities, knew, or should have known, that the named DEFENDANTS and managing agents were engaging in illegal conduct and had been warned, informed, and given prior notice of the illegal conduct. It is well established that when an employer ratifies the tortious conduct of an employee, he or she becomes "liable for the employee's wrongful conduct as a joint participant."). An employer who fails to discipline an employee after being informed of that employee's improper conduct can be deemed to have ratified that conduct. When an employer is informed that an employee has committed an intentional tort and nevertheless declines to "censure, criticize, suspend or discharge" that employee, a claim can be made for ratification.

24.     Ratification is the voluntary election by a person to adopt in some manner, as his own, an act which was purportedly done on his behalf by another person, the effect of which, as to

some or all persons, is to treat the act as if originally authorized by him. A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.

25.     At all relevant times alleged herein, DEFENDANT CITY, and its managing agents, in both their individual and official capacities, had actual and constructive knowledge of Defendants', and managing agents', illegal conduct and has endorsed, ratified, and encouraged Defendants' illegal behavior. DEFENDANT CITY, and its managing agents, in both their individual and official capacities, failed to take any corrective action to protect employees and the public from Defendants' illegal behavior.

## **STATEMENT OF FACTS**

26.     At all times herein relevant, it was well known amongst police officers and supervisory staff at the Richmond Police Department that Plaintiff was a minor, and was available to them for sexual favors and pleasure in exchange for paid monies, protection, or other forms of consideration.

27.     The named Defendants, as well as other Richmond Police Department officers, commanding officers, supervisory and support staff, were as well aware of the existence of Plaintiff being an underage sex worker as their law enforcement colleagues at the Oakland Police Department ("OPD"), Contra Costa Sheriff's Department ("CCSD"), Alameda County Sheriff's Office ("ACSO"), Livermore Police Department ("LPD") and San Francisco Police Department ("SFPD"), and shared such information amongst each other, including the minor's contact information and recommendations as to her services as a sex worker.

28.     Rather than acting upon such information to enforce laws against pimping, pandering and otherwise sexually exploiting minors, DEFENDANT RPD POLICE OFFICERS personally used Plaintiff's servcies as a sex worker .

29.     As such, Plaintiff was sex-trafficked between the hands of Oakland Police Officers, Contra Costa County and Alameda County Sheriff's Deputies, San Francisco Police Officers, Livermore Police Officers and DEFENDANT RPD POLICE OFFICERS. DEFENDANT RPD OFFICERS, who received and obtained sexual offerings and treatment from Plaintiff, were open and notorious about such encounters throughout the RPD. Plaintiff's sexual exploitation by officers was well publicized throughout the RPD as was the exploitation of sex workers in general a well acknowledged part of the RPD culture. DEFENDANT RPD OFFICERS communicated and exchanged information amongst themselves and others in the RPD, including supervisory staff, in order to retain and perpetuate the availability of Plaintiff's sexual services for themselves in their capacity as police officers.

30.     On information and belief, DEFENDANTS CHIEF MAGNUS and CHIEF BROWN, had knowledge of RPD's culture, which included officers soliciting sex from Plaintiff and similarly situated child sex workers and/or adult sex workers like Plaintiff. As head of RPD's Internal Affairs Division, LT. DICKERSON also had knowledge of RPD's culture that included officers soliciting sex from Plaintiff and similarly situated minors, many of whom were sex trafficked similarly to Plaintiff.

31.     Despite such knowledge, CHIEF MAGNUS and CHIEF BROWN failed and refused to adequately investigate its RPD OFFICERS who were soliciting Plaintiff, and as such, acquiesced to and authorized their conduct. Furthermore, CHIEF MAGNUS, CHIEF BROWN, and head of RPD's Internal Affairs Division LT. DICKERSON, failed to take any action against RPD OFFICERS. Instead, these aforementioned policy and decision-makers allowed them to remain employed as officers, with deliberate indifference to Plaintiff's ights by failing to act on their notice that her constitutional rights were being violated.

32.     The aforesaid actions by CHIEF MAGNUS, CHIEF BROWN, and LT. DICKERSON constituted a deliberate indifference to the constitutional rights of PLAINTIFF and other sex trafficked minors and sex workers with whom RPD OFFICERS solicited while in the employ of RPD and under the supervision of DEFENDANTS CHIEF MAGNUS and CHIEF BROWN.

7

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

33.     Officers at OPD, CCSD, and DEFENDANT OFFICERS at RPD relied on and displayed their status and power as law enforcement officers to coerce, frighten and threaten Plaintiff into continuing to provide sexual services in exchange for money and immunity from future arrest and prosecution.

34.     As mandated by RPD regulations, DEFENDANT OFFICERS were in possession of their firearm and badge during their sexual encounters with Plaintiff. Plaintiff was fearful that she would face repercussions if she refrained from catering to DEFENDANT OFFICERS' requests for sexual contact.

35.     At all times while Plaintiff was explicitly and conspicuously a sex trafficked minor, DEFENDANT RPD OFFICERS, as well as other RPD police officers, personnel and staff, were not provided with necessary and adequate training to identify victims of sexual abuse and sexual trafficking.

36.     Having been sex trafficked since she was in high school, Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD"), in part as a consequence of Defendants' conduct. PTSD is a disability recognized under the Americans with Disabilities Act. 42 U.S.C. 12202; 42 U.S.C. 12131(2).

37.     DEFENDANTS CITY and RPD failed to provide its law enforcement personnel with training, supervision, or education on PTSD and/or instruction on how to interact with individuals, like sexually trafficked minors and other sex workers. After extensive bay area media attention, the Police Department's Office of Professional Accountability led an investigation into officer misconduct, and identified eleven current and former police personnel that were involved in misconduct. As a result of this misconduct, disciplinary actions are being recommended as follows: One officer is proposed to be terminated from employment; One officer is proposed to be demoted; Two officers are proposed to be suspended, one for 80 hours, and the other for 120 hours; Five officers are proposed to receive letters of reprimand.

38.     According to Richmond Mayor Tom Butt: "The City of Richmond has worked very hard to make the Richmond Police Department a national model for community-involved policing. I am both disappointed and outraged that the individual behavior of some

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

Richmond police officers has brought discredit to the department and serves to undermine community trust. I know that this outrage is shared by my colleagues on the Richmond City Council."

39.     "I am sorry that the misconduct of these individuals has brought embarrassment to the City of Richmond and the Richmond Police Department," stated Richmond Police Chief Allwyn Brown. "Police officers must be held to a higher standard with regard to their personal and professional conduct because their effectiveness in serving the community depends on the public's trust. Integrity is indispensable to the position of police officer, and a breach of that integrity will not be tolerated at the Richmond Police Department."

## DEFENDANT TERRANCE JACKSON

40.     DEFENDANT TERRANCE JACKSON met Plaintiff when she was a high school student. DEFENDANT JACKSON was assigned to her school as a resource officer and befriended Plaintiff. DEFENDANT JACKSON told Plaintiff that he and the whole school, including the students and the principal, knew that she was working as an underage child sex worker. Given this knowledge, DEFENDANT JACKSON had an obligation to report the abuse he knew Plaintiff was suffering. Nevertheless, DEFENDANT JACKSON did not make any efforts to assist Plaintiff from being sexually exploited and trafficked.

41.     On an occasion after Plaintiff left high school, DEFENDANT JACKSON responded to Plaintiff's home while on duty and in a City of Richmond patrol car.  Plaintiff came out of her home wearing only a robe.  When she greeted DEFENDANT JACKSON, while in full uniform and on duty as a Richmond Police officer, he asked Plaintiff to show him her breasts, and when she did, he groped Plaintiff's breasts.

## DEFENDANT ARMANDO MORENO

42.     In or around February to April of 2016, Plaintiff was walking down 23rd Street in the City of Richmond in an area known to RPD officers as a hub for human trafficking of child sex workers and/or adult sex workers. City of Richmond Police Officer DEFENDANT ARMANDO MORENO drove past Plaintiff in a patrol car and looked at her. He continued to drive and pulled

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

his car over to the curb about a block away from where he spotted her.

43.     Plaintiff continued walking and eventually made it to where Officer Moreno had pulled his car over. The two talked for approximately 30 minutes and at the end of the conversation the two exchanged phone numbers, with Officer Moreno promising to connect Plaintiff with resources that could help her to get out of the sex exploitation industry. As events unfolded, this promise was merely a ploy to gain Plaintiff's confidence in order to obtain sexual favors from Plaintiff.

44.     Approximately 1-2 hours later, Officer Moreno contacted Plaintiff and told her he had some papers he wanted to give her that could assist her with getting out of the "life." They met in the parking lot of a church close to Plaintiff's home.  Officer Moreno gave her the pamphlets he promised and no sexual interaction took place.

45.     Time passed and Plaintiff texted Officer Moreno to thank him. During the conversation, he asked Plaintiff if she had the Kik smartphone application – which would allow them to communicate on something other than his work phone. She replied "yes" and they began communicating through Kik.

46.     Later that same month, they again met up in the church parking lot near Plaintiff's home. This time their interaction turned sexual. Officer Moreno groped her breasts and she rubbed his exposed penis.

47.     The next time they met up, Officer Moreno took her on a date to Berkeley to the hot tubs. When he picked her up to take her to the hot tubs, Officer Moreno claimed he had just finished a training workshop and his wife didn't know that he got out early. Officer Moreno had sex with Plaintiff at the hot tubs.

48.     After news of the police scandal broke and Plaintiff had given an interview to the City of Richmond Police Department's Internal Affairs Department, she called Officer Moreno. He did not answer the call, but instead had a different officer call her back. That yet-to-be identified Officer asked her the details of what she told Internal Affairs and whether she disclosed what Officer Moreno and she had done when he was on duty.

49.     Plaintiff had sex with Officer Moreno in exchange for him providing protection and

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

confidential police information. To that end, on one occasion, Officer Moreno permitted Plaintiff to review a police report pertaining to a sexual assault that had been committed against one of her friends. In addition, on one of the many occasions she was working on 23rd Street in Richmond, he sent her a text as a warning about impending law enforcement activity, telling her "it's going to get hot." As she began to walk away from 23rd Street, a Richmond Police Officer detained her, placing her in handcuffs. Consistent with the protection Plaintiff received in exchange for sexual favors, the Officer immediately released her without issuing a citation or arresting her.

## DEFENDANT MIKE ROOD

50.     Sometime during February and March of 2016, Plaintiff met City of Richmond Police Officer DEFENDANT MIKE ROOD.  They began a sexual relationship that included him meeting her for sex on several occasions in front of the church near Plaintiff's home. He confided in her his foot fetish and would often text and/or call to ask questions about her feet.  DEFENDANT ROOD knew Plaintiff was a sex worker and took advantage of his status as a police officer by coercing her into having sexual encounters in exchange for providing her protection from arrest and prosecution.

## DEFENDANT JERRED TONG

51.     Sometime during 2015, City of Richmond Police Officer DEFENDANT JERRED TONG met Plaintiff through social media. Initially, Plaintiff did not know he was a police officer, although he later revealed that to her during subsequent conversations.  She later learned he was a school resource officer at the high school from which she graduated.  They later agreed to meet up in person.

52.      One night, Officer Tong visited Plaintiff's home while on duty, as he was wearing his uniform and driving a marked patrol car. They spoke on her front porch. After they spoke for a short while, he leaned in to kiss  her. He kissed her on the mouth and she felt his erect penis through his police uniform.

53.      Over the next several weeks, they continued to meet and engage in sexual

11

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

activity. During the next two times they met, they exchanged oral sex, with Plaintiff performing fellatio and Officer Tong performing cunnilingus on her in his car while parked in front of her house.

54.   Plaintiff engaged in the sexual encounters in exchange for protection and access to confidential police information. Officer Tong supported and promoted Plaintiff's prostitution activities. For example, he would ask her to send him pictures and suggest outfits and poses for her prostitution ads. She also asked him for confidential information about a family member's recent arrest.

**DEFENDANT ANDRE HILL**

55.   Plaintiff first met DEFENDANT ANDRE HILL while she was in high school and he was working as a Richmond Police Officer. Shortly thereafter, he started grooming her, preparing her for his sexual advances. He would routinely call her and tell her to stand in the front picture window of her home that faces the street. He would instruct her to disrobe and flash her breasts at him while he drove by.  Plaintiff engaged in a sexual relationship with Defendant Officer HILL in exchange for receiving protection and confidential information from him.   For example, Officer Hill called her and asked whether she was working the "blade."  The blade is slang for the street where sex workers work in Richmond.  She told him no and asked why, to which he replied that, "it was going to get hot." This phrase meant that there was going to be a sting and/or police activity on 23rd Street.

56.   DEFENDANTS CITY and RPD knew, or should have known, that sex trafficked minors, like Plaintiff, and/or sex workers with PTSD, like Plaintiff, are vulnerable and susceptible to coercion by law enforcement officials, who use their position and authority to exploit women like Plaintiff.

57.   DEFENDANTS CITY and RPD lacked a policy or procedure to protect persons similarly situated to Plaintiff from officers, like DEFENDANT RPD OFFICERS, who exploited Plaintiff's disability, which she shares with other similarly situated sex trafficked minors and sex workers.

# FIRST CAUSE OF ACTION
## AGAINST CHIEF MAGNUS AND CHIEF BROWN
### (Supervisory Liability for Section 1983 Violations)

58.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

59.     CHIEF MAGNUS' and CHIEF BROWN'S failure and refusal to adequately investigate RPD OFFICERS, failure to take any corrective action against them, when they were on notice of some of the misconduct alleged herein by Defendant RPD OFFICERS, allowing RPD OFFICERS to remain employed as police officers with the RPD, and engaging in deliberate indifference to the rights of others by failing to act on information that Plaintiff's constitutional rights were being violated by RPD OFFICERS, were in deliberate indifference to Plaintiff's Constitutional Rights.

60.     The Federal Law "The Trafficking Victims Protection Act (TVPA) of 2000)", Penal Code Section 288a(b)(1), and Child Abuse and Neglect Reporting Act ("CANRA"), Amended Effective September 9, 2013, are well established laws for the protection of children.

61.     The California Child Abuse and Neglect Reporting Act ("CANRA," Penal Code sections 11164-11174.4) requires certain professionals, known as mandated reporters, to report known or suspected instances of child abuse or neglect to law enforcement. California mandated reporting laws were first enacted in 1963. The primary purpose for these reporting laws is protection of the child. Penal Code Section 11165 states: "Persons reporting incidents of child abuse are immune from civil or criminal prosecution (Penal Code Section 11172). Failure to report child abuse is a misdemeanor and punishable by up to six (6) months in the county jail or a fine of not more than $1,000 or both."

62.     DEFENDANT MAGNUS' and BROWN's  acts and failure to act as DEFENDANT RPD POLICE OFFICERS' supervisor deprived the Plaintiff of her particular rights under the laws of the United States and the United States Constitution, including the Fourth Amendment Right of Privacy and the Fourteenth Amendment Right to Liberty. Said DEFENDANTS disregarded the known or obvious consequence that a particular training deficiency in protecting children from sexual abuse and sex trafficking or omission to train would cause his subordinates, including

1    DEFENDANT RPD POLICE OFFICERS to violate the Plaintiff's constitutional rights.

2    63.    The training policies of the Defendant CITY OF RICHMOND were not adequate to

3    prevent violations of law by its employees, and said Defendants were aware of the deficiencies. In

4    spite of such knowledge, said Defendants, in furtherance of a policy, practice, custom and pattern,

5    failed to train his sheriff's deputy officers to handle the increasing, usual and recurring situations of

6    sex trafficking of minors, such as Plaintiff, with whom they must deal.

7    64.    DEFENDANTS CITY, MAGNUS, and BROWN were deliberately indifferent to the

8    substantial risk that its policies, practice, custom and pattern of inactions were inadequate to prevent

9    violations of law by its police officers, such as the violations of law committed by Defendant RPD

10   POLICE OFFICERS against Plaintiff. Further, said Defendants were deliberately indifferent to the

11   known or obvious consequences of their failure to adequately train their police officers, including

12   Defendant RPD POLICE OFFICERS.

13   65.    Had DEFENDANT RPD POLICE OFFICERS been properly trained, they knew or

14   would have known that Plaintiff was a minor during some of the time they were having sexual

15   relations with her.  As sworn peace officers, it was their duty to uphold the laws of Contra Costa

16   County, the state of California, and the United States.  Had they been properly trained, they would

17   have realized that it was illegal for them to have sexual relations with Plaintiff. Had they been

18   properly trained, they would have verified Plaintiff's age prior to engaging in sexual relations with

19   her, given her apparent youth.  Had they been properly trained, they would have made an inquiry

20   into her well-being and would have made the proper reporting under CANRA.  Had they been

21   properly trained, on learning that Plaintiff engaged in under age sex acts, they would have made the

22   mandatory reporting as required by the California Penal Code.

23   66.    Said Defendants' failures to train DEFENDANT RPD POLICE OFFICERS

24   regarding their duty under Penal Code section 288a(b)(1) and Child Abuse and Neglect Reporting

25   Act ("CANRA")  amounted to deliberate indifference, because a reasonable supervisor in said

26   Defendants' position would have realized that failing to adequately train and supervise police

27   officers under Penal Code section 288a(b)(1) and CANRA would likely result in a constitutional

28   violation such as occurred here.

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

### SECOND CAUSE OF ACTION
### AGAINST LT. DICKERSON
#### (Supervisory Liability for Section 1983 Violations)

67.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

68.     As head of RPD's Internal Affairs Division, LT. DICKERSON's failure and refusal to adequately investigate RPD OFFICERS, failure to take any corrective action against them, allowing them to remain employed as police officers with the RPD, and engaging in deliberate indifference to the rights of others by failing to act on information that PLAINTIFF's Constitutional rights were being violated by RPD OFFICERS, was in deliberate indifference to Plaintiff's Constitutional rights.

WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

### FOURTH CAUSE OF ACTION
### AGAINST THE CITY
#### (42 U.S.C. 1983 Monell based on policy, practice and custom)

69.     PLAINTIFF repeats and realleges each and every allegation set forth above as though fully set forth at length herein

70.     Defendants CHIEF MAGNUS and CHIEF BROWN'S failure and refusal to adequately investigate RPD OFFICERS, including Defendant RPD POLICE OFFICERS, the failure to take any corrective action against them, including Defendant RPD POLICE OFFICERSS, allowing them to remain employed as police officers with the RPD, engaging in gross negligence in supervising them, and engaging in deliberate indifference to the rights of others by failing to act on information that PLAINTIFF's constitutional rights were being violated by Defendant RPD OFFICERS, the CITY OF RICHMOND, which employed these policymakers during the relevant time period, exhibited a de facto practice, and unofficial custom, policy of deliberate indifference to Unconstitutional conduct, proximately causing Plaintiff's injuries and

1  damages.

2        WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

3

4                          **FIFTH CAUSE OF ACTION**
        **AGAINST DEFENDANTS HILL, MORENO, ROOD, TONG, AND**
5                                **JACKSON**
              **(42 U.S.C. 1983 based on Fourteenth Amendment**)
6
        71.    PLAINTIFF repeats and realleges each and every allegation set forth above as
7
   though fully set forth at length herein.
8
        72.    The aforementioned actions of the named Richmond Police Department Officers
9
   constitute a violation of PLAINTIFF's substantive due process rights, guaranteed by the
10
   Fourteenth Amendment of the U.S. Constitution, by violating PLAINTIFF's bodily integrity and
11
   thus entitle PLAINTIFF to recover damages pursuant to 42 U.S.C 1983.
12
        73.    Each of the five officers knew that PLAINTIFF was a sex worker and had
13
   been trafficked as a sex worker as a child. A reasonably prudent and properly trained police
14
   officer having met PLAINTIFF would have provided support or resources to PLAINTIFF. The fact
15
   that each of the five DEFENDANT OFFICERS decided to also exploit the young and vulnerable
16
   PLAINTIFF is evidence of a widespread and persistent custom of exploiting child sex workers
17
   and/or adult sex workers by providing protection in exchange for sexual favors.
18
        74.    Each of the five officers used their status as police officers, acting under color of
19
   state law, to extract sexual favors from PLAINTIFF in exchange for police protections. By
20
   providing this quid pro quo, PLAINTIFF's actions were not consensual, but rather were done by
21
   necessity to avoid arrest and criminal prosecution. DEFENDANT OFFICERS, and each of them,
22
   thereby utilized their positions as police officers to compel PLAINTIFF to perform sexual
23
   acts  in violation of her Constitutional rights.
24
        75.    In addition, said Defendants violated the Federal Law "The Trafficking Victims
25
   Protection Act (TVPA) of 2000)", and California Penal Code Section 288a(b)(1), and Child Abuse
26
   and Neglect Reporting Act ("CANRA"), Amended Effective September 9, 2013. Said Defendants
27
   were also mandated reporters under the California Child Abuse and Neglect Reporting Act
28

("CANRA," Penal Code sections 11164-11174.4), and intentionally failed to report the child abuse committed against plaintiff of which they were aware.

WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

**SIXTH CAUSE OF ACTION**
**AGAINST DEFENDANTS HILL, MORENO, ROOD, TONG, JACKSON and LT. DICKERSON**
**(42 U.S.C. 1983-Conspiracy)**

76.   PLAINTIFF repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

77.   The aforementioned actions of the Defendants constituted a violation of PLAINTIFF's substantive due process right to bodily integrity when they acted jointly, in concert, to procure sexual services from PLAINTIFF, a sex trafficked minor, with an intention of retaining her services for themselves, as well as sharing and advertising her services with other RPD personnel and law enforcement colleagues throughout the Bay Area. Despite knowledge and awareness of such undertakings and by refraining from investigating and taking corrective action against the involved officers, LT. DICKERSON acted in concert with said involved officers and thus, perpetuated the constitutional violations incurred by PLAINTIFF.

WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

**SEVENTH CAUSE OF ACTION**
**AGAINST ALL NAMED DEFENDANTS and DOES 1-200**
**VIOLATION OF 42 U.S.C. § 1985(2)**
**(Conspiracy to Obstruct Justice through Witness Tampering)**

78.   PLAINTIFF repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

79.   Various Defendant Richmond Police Department Officers agreed, conspired and took overt acts to prevent Plaintiff from testifying against various Richmond Police Department Officers by sending Plaintiff to Stuart, Florida, alone, under the pretext that Plaintiff

needed to be institutionalized in a drug treatment program.

80.    Defendant Richmond Police Department Officers knew at all relevant times that Plaintiff has given testimony and statements to law enforcement departments in Oakland, San Francisco, Richmond and other departments regarding sexual abuse by various Richmond Police Department Officers and police officers in various police departments in the San Francisco Bay Area.

81.    Defendant Richmond Police Department Officers knew at all relevant times that Plaintiff's testimony could result in criminal and civil prosecution and departmental discipline of Richmond Police Department Officers. In order to silence Plaintiff's testimony, Defendant Richmond Police Department Officers agreed, conspired and took overt acts to prevent Plaintiff from testifying against various Richmond Police Department Officers by sending Plaintiff to Stuart, Florida.

82.    The aforementioned actions of Richmond Police Department Officers constituted a Conspiracy to Obstruct Justice through Witness Tampering and are a violation of PLAINTIFF's substantive due process rights. Defendants, and each of them, acted jointly in concert, pursuant to agreement, plan and scheme, to hide, conceal, and confine Plaintiff away in Stuart, Florida. The purpose of which was to stunt the active criminal and administrative prosecutions Defendants knew were in progress and ongoing. Defendants, and each of them, also acted jointly in concert, pursuant to agreement, plan and scheme to further procure sexual services from PLAINTIFF, a sex trafficked minor, with an intention of retaining her services for themselves, as well as sharing and advertising her services with other RPD personnel and law enforcement colleagues throughout the Bay Area. Despite knowledge and awareness of such undertakings and by refraining from investigating and taking corrective action against the RPD OFFICERS, various RPD OFFICERS, acted in concert, and pursuant to an agreement, plan and scheme and conspiracy with each other, further

perpetuating the constitutional violations and deprivations inflicted on PLAINTIFF.

WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

### EIGHTH CAUSE OF ACTION
### AGAINST DEFENDANT RPD POLICE OFFICERS
### (42 U.S.C. 1983 Violation of
The Trafficking Victims Protection Act (TVPA) of 2000)
### (18 .S.C. § 1590)

83. The Trafficking Victims Protection Act (TVPA) of 2000) provides: "Whoever knowingly recruits, harbors, transports, provides, or obtains by any means any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both."

84. Defendant RPD POLICE OFFICERS were informed by Plaintiff, and knew or should have known that that the illegal sexual relationship was one of a "Quid Pro Quo" or for minor Plaintiff's protection from police arrest to enable her to continue as a sex-trafficked child. Defendants knew that Plaintiff was having illegal sex as a minor with other law enforcement officers.

85. Defendants knowingly recruited, harbored, transported, provided, or obtained by any means Plaintiff for "services" of his prurient, lascivious, and lustful thoughts and sexual desires.

86. Defendants actions evidenced a reckless and callous disregard, and deliberate indifference to Plaintiff's constitutional rights. Defendants illegal conduct caused, and continues to cause, Plaintiff economic and non-economic damages, including mental and emotional distress.

87. Defendants conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety, and health of Plaintiff. The individual Defendants conduct warrants punitive damages to protect the public in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth herein.

### JURY DEMAND

Plaintiff hereby demands a jury trial in this action.

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB

**PRAYER**

WHEREFORE, Plaintiff prays for relief, as follows:

1.      For general damages in a sum according to proof;

2.      For special damages in a sum according to proof;

3.      For punitive damages against the individualyl named Defendant Officers and those individuals pled as DOES 1-200 in a sum according to proof;

4.      For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

5.      For any and all statutory damages allowed by law;

6.      For cost of suit herein incurred; and

7.      For such other and further relief as the Court deems just and proper.


**LAW OFFICES OF JOHN L. BURRIS**
**LAW OFFICES OF BONNER & BONNER**


Dated: October 20, 2017                    */s/ John L. Burris*
                                           John L. Burris, Esq.
                                           Charles A. Bonner, Esq.
                                           Attorneys for Plaintiff, JASMINE ABUSLIN

FIRST-AMENDED COMPLAINT
Case No. 3:17-cv-04804 LB